IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re CDK Global Data Security Consumer Litigation*, | Case No. 1:24-cv-05221<br><br>Hon. Jeffrey I. Cummings |

**MEMORANDUM OF LAW IN SUPPORT OF
CDK GLOBAL LLC'S OPPOSED MOTION TO STAY DISCOVERY**

**TABLE OF CONTENTS**

Page

**INTRODUCTION** ...................................................................................................................... 1

**BACKGROUND** ........................................................................................................................ 2

**LEGAL STANDARD** ................................................................................................................ 4

**ARGUMENT** .............................................................................................................................. 5

**I.** **Staying Discovery Will Not Unduly Prejudice Plaintiffs** ................................................. 6

**II.** **Staying Discovery Will Eliminate or Narrow the Claims and Defenses for Discovery** 7

**III.** **A Stay Will Reduce the Burden of Litigation.** ................................................................ 11

**CONCLUSION** ......................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Arthur Gallagher Data Breach Litig.*,
   631 F. Supp. 3d 573 (N.D. Ill. 2022) ........................................................................................10

*Bilal v. Wolf*,
   2007 WL 1687253 (N.D. Ill. June 6, 2007) ..............................................................................5, 9

*Calderon v. Procter & Gamble Co.*,
   2022 WL 20742696 (N.D. Ill. Oct. 6, 2022) ........................................................................ *passim*

*Castaneda v. Amazon.com, Inc.*,
   679 F. Supp. 3d 739 (N.D. Ill. 2023) ........................................................................................10

*In re Clearview AI, Inc. Consumer Privacy Litig.*,
   2021 WL 5862495 (N.D. Ill. Aug. 31, 2021) ..........................................................................8, 9

*DeBoard v. BH Urb. Station, LLC*,
   2023 WL 1363346 (S.D. Ind. Jan. 30, 2023) ..............................................................................6

*DSM Desotech Inc. v. 3d Sys. Corp.*,
   2008 WL 4812440 (N.D. Ill. Oct. 28, 2008) ..............................................................................5

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) .................................................................................................10

*Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*,
   2014 WL 2505166 (N.D. Ill. May 29, 2014) ..............................................................................7

*Jay Kay Collision Center, Inc. v. CDK Global, LLC*,
   No. 1:24-cv-05313 .......................................................................................................................4

*Landstrom v. Illinois Dep't of Children & Family Servs.*,
   892 F.2d 670 (7th Cir. 1990) ....................................................................................................10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................................................8

*Medline Indus., Inc. v. C.R. Bard, Inc.*,
   2019 WL 10948865 (N.D. Ill. Sept. 10, 2019) .......................................................................6, 7

*Omnireps, LLC v. CDW Corp.*,
   2024 WL 2052069 (N.D. Ill. May 8, 2024) .............................................................................8, 9

*Pennell v. Global Tr. Mgmt.*,
   LLC, 990 F.3d 1041 (7th Cir. 2021) ................................................................................8

*Rao v. JPMorgan Chase Bank, N.A.*,
   2021 WL 4927415 (N.D. Ill. May 12, 2021) ....................................................................6

*Rodriguez v. Ford Motor Co.*,
   2022 WL 704780 (N.D. Ill. Mar. 9, 2022) ................................................................ *passim*

*Sadler as Tr. of Larry R. Sadler Irrevocable Tr. v. Retain Props. Of Am., Inc.*,
   2013 WL 12333447 (N.D. Ill. Sept. 27, 2013) ..................................................................6

*Sprague v. Brook*,
   149 F.R.D. 575 (N.D. Ill. 1993) .........................................................................................9

*Sterigenics U.S., LLC v. Kim*,
   2019 WL 10449289 (N.D. Ill. Mar. 19, 2019) ...................................................................9

*Strautins v. Trustwave Holdings, Inc.*,
   27 F. Supp. 3d 871 (N.D. Ill. 2014) ...................................................................................8

*Su v. Su*,
   2022 WL 22877455 (N.D. Ill. Apr. 11, 2022) (Cummings, J.) .............................4, 6, 7, 8

*In re Sulfuric Acid Antitrust Litig.*,
   231 F.R.D. 331 (N.D. Ill. 2005) .....................................................................................4, 5

*Vital Proteins, LLC v. Ancient Brands, LLC*,
   2023 WL 5671857 (N.D. Ill. Sept. 1, 2023) (Cummings, J.) .............................................5

*Wittmeyer v. Heartland All. for Hum. Needs & Rts.*,
   2024 WL 182211 (N.D. Ill. Jan. 17, 2024) ......................................................................10

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act .....................................................2

Violation of the California Consumer Privacy Act, and (10) Violation of the
   Florida Deceptive and Unfair Trade Practices Act ..........................................................2

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................................4

Rule 9 ..............................................................................................................................................9

Rule 12(b)(6) ...................................................................................................................................9

**Other Authorities**

Accessed August 26, 2024. https://www.forbes.com/sites/jimhenry/2024
/07/03/dealership-software-comes-back-online-after-cyberattack-at-cdk-
global/ ..................................................................................................................7

CBT, August 27, 2024. https://www.cbtnews.com/ .......................................................7

CBT, August 27, 2024, https://www.cbtnews.com/cdk-global-confirms-no-data-
breach-in-june-cyberattacks/ ................................................................................3

Data Breach Notification to Maine Attorney General,
https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-
a1252b4f8318/ca6cd1a4-d5d7-4cde-8c02-673e38f3d8d3.html ................................3

Henry, Jim, "*Dealership Software Comes Back Online After Cyberattack at CDK
Global*," Forbes, July 3, 2024 ...............................................................................7

## INTRODUCTION

CDK Global, LLC provides software products and services to car dealerships nationwide. In June 2024, CDK was the victim of a ransomware attack. Following the attack, an investigation by third-party forensic experts found no compromise of dealer, dealer employee, or consumer personally identifiable information ("PII") that would give rise to any notification obligations relating to the incident. Although this fact is publicly available, plaintiffs filed a consolidated complaint that omitted the results of CDK's investigation and instead sought damages based on the incorrect premise that plaintiffs' PII was compromised in the incident.

On June 3, 2025, CDK will file a motion to dismiss that challenges plaintiffs' standing to bring any claims predicated on the alleged theft of plaintiffs' PII, which did not occur.[1] CDK will also explain how each of plaintiffs' claims otherwise fail as a matter of law. CDK believes its motion to dismiss will resolve this case in its entirety. But at the very least, CDK's motion will address fundamental threshold issues and clarify the scope of any discovery moving forward. A brief stay of discovery while the Court considers CDK's motion to dismiss and whether it has jurisdiction is thus appropriate.

A temporary stay will not prejudice plaintiffs. To the contrary, a short stay will reduce the burden on the parties and Court. Plaintiffs have made clear their intention to immediately pursue broad class-wide discovery for each putative class, across every disputed claim, and on a restricted timeline. A brief stay will keep the parties from expending time and significant resources on putative class-wide discovery about claims that cannot proceed, and a stay will also avoid

---

[1] While all plaintiffs bring claims associated with the alleged disclosure of their PII, four plaintiffs also bring claims seeking lost profits allegedly due to the brief unavailability of CDK's software products and services following the attack. CDK does not expect to challenge the validity of lost profits as a viable injury for standing, but CDK will raise a number of other arguments for why those claims fail as a matter of law.

1

burdening the Court with discovery disputes on these non-viable claims. "Given the burden, time, and expense often associated with responding to discovery in a putative class action," in actions such as this one, "courts regularly stay discovery pending a ruling on a motion to dismiss." *Rodriguez v. Ford Motor Co.*, 2022 WL 704780, at *2 (N.D. Ill. Mar. 9, 2022).[2] That the Court may lack jurisdiction to hear plaintiffs' PII claims only cements the need for a stay.

Because beginning discovery now would be both onerous and likely unnecessary, CDK respectfully requests that the Court defer entering a discovery schedule until 30 days after the Court rules on CDK's motion to dismiss, or in the alternative, delay the start of discovery until 90 days after briefing on CDK's motion to dismiss is complete.

## BACKGROUND

On June 19, 2024, CDK experienced a ransomware attack on its systems. ECF No. 53 ¶ 1. Shortly thereafter, CDK proactively and temporarily took all applications offline. *See id.* ¶ 5. Within three days of the attack, this putative class action was brought against CDK. *See generally id*. In the following months, nine other cases were consolidated with this action, and on April 18, 2025, seven plaintiffs filed a consolidated amended complaint on behalf of five putative classes and alleging ten claims:[3] (1) Negligence, (2) Negligence *Per Se*, (3) Breach of Confidence, (4) Breach of Implied Contract, (5) Breach of Fiduciary Duty, (6) Unjust Enrichment, (7) Declaratory Judgment, (8) Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, (9) Violation of the California Consumer Privacy Act, and (10) Violation of the Florida Deceptive and Unfair Trade Practices Act. *See* ECF No. 53 ¶¶ 277-410.

---

[2] All internal quotations and citations have been cleaned up unless otherwise noted. All emphasis has been added, unless otherwise noted as well.

[3] The consolidated complaint lists 11 counts; however, it excludes count six, resulting in a total of ten claims. ECF No. 53 ¶¶ 330-340.

Plaintiffs in this action purport to be (i) consumers who leased or purchased vehicles from dealerships that used CDK software or (ii) current or former employees of dealerships who used CDK software. *Id.* None are contractual counterparties to CDK. None are CDK customers. None are CDK employees. None allege any direct relationship with CDK, routine interaction with CDK, or payment to CDK. None allege providing their PII directly to CDK. *See id*.

Rather, they allege that CDK's dealership customers stored plaintiffs' PII on CDK's Dealer Management System ("DMS"), and that during the incident the threat actor gained access to DMS and exfiltrated files containing consumers' PII. *See id.* ¶¶ 5, 16, 33, 63. However, an investigation by third-party forensic experts found no compromise of dealer, dealer employee, or consumer PII that would give rise to any notification obligations relating to the June 2024 ransomware attack. *See* Campbell, Jaelyn, "*CDK Global confirms no data breach in June cyberattacks*," CBT, August 27, 2024, https://www.cbtnews.com/cdk-global-confirms-no-data-breach-in-june-cyberattacks/. CDK made its dealership customers aware of its investigative findings, which were also published in the news media. *See id*.[4] CDK further informed plaintiffs of these facts on a March 7, 2025 meet and confer.

Plaintiffs nonetheless filed suit against CDK seeking (i) for all plaintiffs, damages relating to the alleged disclosure of their PII; and (ii) for four dealership-employee plaintiffs, lost profits relating to lost commissions that they attempt to pin on the unavailability of certain CDK products and services following the incident (as opposed to the myriad of other reasons why a car sale may not close). Plaintiffs also seek immediate, broad-ranging discovery and briefing on class

---

[4] The only exposed PII belonged to 36 current or former vendors of CDK/its corporate predecessor, none of whom are plaintiffs, and CDK made the appropriate notifications to those individuals as required by state law. *See* Data Breach Notification to Maine Attorney General, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/ca6cd1a4-d5d7-4cde-8c02-673e38f3d8d3.html.

certification in less than eight months. ECF No. 54, at 4. They claim that they need "[d]iscovery related to the allegations of Plaintiffs and the putative classes set forth in the Complaint and related to any defenses Defendant might raise." *Id.*

In response, CDK asked to meet and confer so that the parties could find a reasonable path forward on discovery without this Court's intervention. During the meet and confer, CDK explained that plaintiffs' discovery proposal would be contrary to the usual practice in this jurisdiction, given CDK's expected challenge to plaintiffs' standing and CDK's position that each of plaintiffs' claims fail on their own as a matter of law. CDK offered what the Court ordered in the consolidated non-dealer action against CDK: that the parties instead agree to negotiate a proposed protective order and proposed protocol on electronically stored information during the pendency of CDK's motion to dismiss, so the parties could begin discovery on any remaining claims once the Court rules on CDK's motion to dismiss. *See* ECF No. 48, *Jay Kay Collision Center, Inc. v. CDK Global, LLC*, No. 1:24-cv-05313. Plaintiffs rejected CDK's offer and did not make a counteroffer. This motion follows.

## LEGAL STANDARD

Courts have broad discretion to manage discovery under Rule 26. *Su v. Su*, 2022 WL 22877455, at *1 (N.D. Ill. Apr. 11, 2022) (Cummings, J.). Under Rule 26(c) and (d), "a court may limit the scope of discovery or control its sequence." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005). Courts often consider three factors when deciding whether a stay is appropriate: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Calderon v. Procter & Gamble Co.*, 2022 WL 20742696, at *1 (N.D. Ill. Oct. 6, 2022) (ordering a stay of discovery pending resolution on motion to dismiss). While "the filing of a motion to dismiss does

4

not automatically stay discovery, staying discovery during the pendency of such a motion is not disfavored and is often appropriate where the motion to dismiss can resolve the case" or where "discovery may be especially burdensome and costly to the parties." *Vital Proteins, LLC v. Ancient Brands, LLC*, 2023 WL 5671857, at *3 (N.D. Ill. Sept. 1, 2023) (Cummings, J.); *Rodriguez*, 2022 WL 704780, at *1. In fact, these types of stays are granted with "substantial frequency." *Bilal v. Wolf*, 2007 WL 1687253, at *1 (N.D. Ill. June 6, 2007); *see also Sulfuric Acid*, 231 F.R.D. at 336 ("Indeed, some districts have a rule that prohibits discovery during the pendency of such a motion, and in some circuits, district courts have been advised to resolve a motion to dismiss before allowing discovery.").

A stay of discovery is particularly appropriate where a party challenges a court's jurisdiction. *See, e.g.*, *Calderon*, 2022 WL 20742696, at *2; *DSM Desotech Inc. v. 3d Sys. Corp.*, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) ("Stays are often deemed appropriate where the motion to dismiss can resolve a threshold issue such as jurisdiction, standing, or qualified immunity or where, in cases such as this one, discovery may be especially burdensome and costly to the parties."). A court does not need to find that the motion to dismiss would, or even is likely, to be dispositive; instead, a court "considers" whether the defendant's "arguments *may* be dispositive, rendering discovery unnecessary or at least narrowing its scope." *Calderon*, 2022 WL 20742696, at *2.

## ARGUMENT

A stay of discovery pending resolution of CDK's forthcoming motion to dismiss is appropriate and consistent with how courts in this district have approached other putative class actions. *See, e.g.*, *Rodriguez*, 2022 WL 704780, at *1-2 (granting motion to stay discovery in putative class action); *Calderon*, 2022 WL 20742696, at *1-2 (same). A stay at this juncture (1) will not unduly prejudice plaintiffs; (2) will simplify the issues for discovery; and (3) will

5

reduce the burden and cost on the parties and Court. *See Su*, 2022 WL 22877455, at *1. The Court should grant CDK's motion to stay.

## I. Staying Discovery Will Not Unduly Prejudice Plaintiffs

A brief stay of discovery while this Court assesses whether it has jurisdiction and whether plaintiffs' claims are sufficiently pleaded will not unduly prejudice plaintiffs. *See Rao v. JPMorgan Chase Bank, N.A.*, 2021 WL 4927415, at *1 (N.D. Ill. May 12, 2021) (affirming stay and finding plaintiff's general assertion of prejudice insufficient as a plaintiff must "establish [a] sort of 'imminent' threat to her well-being").

***First***, plaintiffs do not articulate any urgent need for discovery now. *See* ECF No. 54. Further, plaintiffs have not moved for a preliminary injunction. *See Rodriguez*, 2022 WL 704780, at *1 (finding no prejudice because the plaintiff "seeks no immediate injunctive relief," among other things); *Medline Indus., Inc. v. C.R. Bard, Inc.*, 2019 WL 10948865, at *2 (N.D. Ill. Sept. 10, 2019) (same). Nor have plaintiffs "identif[ied] any witnesses or documents that will be lost or no longer discoverable if discovery is stayed." *Su*, 2022 WL 22877455, at *1. All of plaintiffs' claims rest on whether plaintiffs' PII was exfiltrated and whether CDK had contractual or extracontractual obligations to plaintiffs. Documents relevant to these claims (and not in plaintiffs' possession) would be with CDK, and CDK represents that it is complying with its preservation obligations. *See Sadler as Tr. of Larry R. Sadler Irrevocable Tr. v. Retain Props. Of Am., Inc.*, 2013 WL 12333447, at *1 (N.D. Ill. Sept. 27, 2013) (granting a stay will not unduly prejudice plaintiffs because "the documents asked for are usually maintained by corporate entities such as the Defendants in the ordinary course of business" and plaintiffs "may obtain the documents at a later date, if necessary and permissible"); *DeBoard v. BH Urb. Station, LLC*, 2023 WL 1363346, at *2-3 (S.D. Ind. Jan. 30, 2023) (similar).

6

*Second*, CDK's request for a temporary stay comes early in the litigation (before its motion to dismiss is filed) and before any discovery has commenced or deadlines have been set, which "diminishes" any potential disadvantage that plaintiffs might otherwise face. *See Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, 2014 WL 2505166, at *2 (N.D. Ill. May 29, 2014) (finding no prejudice where "[d]iscovery has not commenced and no deadlines for discovery have been set").

*Third*, there is no discovery "emergency" here. Although this action was first initiated more than ten months ago, ECF No. 53, and the record is replete with motions for extension on topics such as plaintiffs' leadership structure and consolidation, *see* ECF Nos. 23, 33, 37, 38, 48, 51, plaintiffs suddenly insist—without reason—that discovery must begin now. Such "general prejudice of having to wait for resolution" of a motion to dismiss is discounted by courts in this district because "having to wait for resolution is not a persuasive reason to deny the motion for stay." *Rodriguez*, 2022 WL 704780, at *1; *Su*, 2022 WL 22877455, at *1; *see also Medline Indus.*, 2019 WL 10948865, at *2 (same). That discount is magnified in light of plaintiffs' own extension requests to get their leadership structure in place.

## II. Staying Discovery Will Eliminate or Narrow the Claims and Defenses for Discovery

The need for and scope of discovery on plaintiffs' claims will be reduced, if not eliminated, by resolution of CDK's motion to dismiss.

*First*, this is not a typical data-breach case. Here, CDK's investigation did not uncover a compromise of dealer, dealer employee, or consumer PII that would give rise to any notification obligation to the plaintiffs.[5] An essential predicate in most consumer class actions arising out of

---

[5] *See generally* Henry, Jim, "*Dealership Software Comes Back Online After Cyberattack at CDK Global*," Forbes, July 3, 2024. Accessed August 26, 2024. https://www.forbes.com/sites/jimhenry/2024/07/03/dealership-software-comes-back-online-after-cyberattack-at-cdk-global/; Campbell, Jaelyn, "*CDK Global confirms no data breach in June cyberattacks*," CBT, August 27, 2024. https://www.cbtnews.com/cdk-global-confirms-no-data-breach-in-june-cyberattacks/.

7

data breach is that their information was, in some form or another, compromised. As CDK's motion to dismiss will detail, the only exfiltrated PII was that of 36 current or former CDK vendors, to whom CDK made appropriate notification as required by applicable state law. None of the 36 are plaintiffs here. Absent the theft of plaintiffs' PII, they cannot assert an injury-in-fact that is fairly traceable to CDK. *See Pennell v. Global Tr. Mgmt.*, LLC, 990 F.3d 1041, 1044 (7th Cir. 2021) (a plaintiff must "demonstrate that he has suffered an injury in fact that is fairly traceable to the defendant's conduct and redressable by a favorable judicial decision"). Plaintiffs lack Article III standing, and this Court lacks jurisdiction to hear their clams based on the theft of their PII. *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 881 (N.D. Ill. 2014) (dismissing complaint where "the complaint fails plausibly to allege that [plaintiff's] PII was stolen and compromised and thus fails in this way too to establish standing to pursue any of [plaintiff's] claims"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).

A challenge to plaintiffs' Article III standing to bring claims is a well-recognized basis for staying discovery until the motion to dismiss is resolved as it may eliminate the need for large swaths of discovery. *See, e.g.*, *In re Clearview AI, Inc. Consumer Privacy Litig.*, 2021 WL 5862495, at *1 (N.D. Ill. Aug. 31, 2021) (staying discovery where defendant "has argued in its motion to dismiss that Plaintiffs lack standing to bring any of their claims against it"); *Calderon*, 2022 WL 20742696, at *2 (noting "[s]tays are often deemed appropriate where the motion to dismiss can resolve a threshold issue such as jurisdiction, standing, or qualified immunity"); *Su*, 2022 WL 22877455, at *2 (staying discovery where the arguments within the motion to dismiss "go to the heart of threshold issues before the Court, including whether: (a) the Court has jurisdiction to resolve this case"); *Omnireps, LLC v. CDW Corp.*, 2024 WL 2052069, at*2-3 (N.D. Ill. May 8, 2024) (staying discovery on all claims subject to motion to dismiss where "the alleged

8

bases for dismissal" including "jurisdiction, statute of limitations, interpretation of contract, and Rule 9"); *Sterigenics U.S., LLC v. Kim*, 2019 WL 10449289, at *2 (N.D. Ill. Mar. 19, 2019) (staying discovery "[b]ecause the Court's subject-matter jurisdiction over this case is in doubt, focusing on the potentially case-dispositive motion to dismiss in advance of nonparty discovery will substantially streamline proceeding").

Like the defendants in *Clearview*, *Calderon*, *Su*, *Omnireps*, and *Sterigenics*, CDK raises substantial arguments that go to the heart of this Court's ability to hear claims before it. If this Court has no jurisdiction to hear plaintiffs' PII claims, any discovery on the data breach would be premature, costly, and unnecessary—not to mention potentially *ultra vires*. A stay of discovery until the motion to dismiss is therefore appropriate.

***Second***, CDK's distinct arguments under Rule 12(b)(6) further justify a stay because each of plaintiffs' claims fails as a matter of law. Where these significant defects could be dispositive of every claim, CDK's forthcoming motion to dismiss weighs heavily in favor of a stay. *See Rodriguez*, 2022 WL 704780, at *1 ("[T]he fact that the issues raised could potentially be dispositive weighs in favor of staying discovery."); *see also Bilal*, 2007 WL 1687253, at *1 (stays of discovery are "not disfavored and are often appropriate where the motion to dismiss can resolve the case").

Further, at this stage, discovery is not necessary or relevant to the *legal* challenges CDK will raise concerning plaintiffs' claims. *See Sprague v. Brook*, 149 F.R.D. 575, 577 (N.D. Ill. 1993) ("A plaintiff's right to discovery before a ruling on a motion to dismiss may be stayed when the requested discovery is unlikely to produce facts necessary to defeat the motion."). For instance, immediate commencement of discovery will not alter the fact that plaintiffs do not point to any

9

strict liability statute on which their negligence *per se* claim could be founded.[6] *See, e.g.*, *Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, 2024 WL 182211, at *3 (N.D. Ill. Jan. 17, 2024) ("[V]iolation of a statute constitutes negligence *per se* only when it is clear that the legislature intended for the act to impose strict liability."). Similarly, discovery will not change the contours of the relationships that plaintiffs allege in the complaint, which identify no direct dealings between CDK and any plaintiff and require the dismissal of various claims as a matter of law. *See, e.g.*, *In re Arthur Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (dismissing implied-contract claim in a data-breach case for plaintiffs that had no direct dealings with the defendant). Indeed, in several of the states where plaintiffs may bring their claims, unjust enrichment is not even a separate cause of action. *Castaneda v. Amazon.com, Inc.*, 679 F. Supp. 3d 739, 756 (N.D. Ill. 2023); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("There is no cause of action in California for unjust enrichment."). Hence, the Court should hold discovery unless and until it rules whether plaintiffs' claims survive CDK's legal challenges. *Rodriguez*, 2022 WL 704780, at *2 (citing *Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 674 (7th Cir. 1990) (affirming a stay of discovery pending a ruling on a motion to dismiss that "turn[ed] on what is essentially a legal issue")).

To be clear, however, this Court need not decide the merits of CDK's motion to dismiss to evaluate whether a stay is warranted. The Court need only find that CDK's motion to dismiss *could* dispose of the entire action or at least narrow its scope. *Calderon*, 2022 WL 20742696, at *2 ("The Court is by no means prejudging the parties' arguments regarding dismissal. But in considering a

---

[6] Plaintiffs' complaint is silent about choice of law. CDK intends to argue that plaintiffs' common law claims are governed by the laws of the states of plaintiffs' residence. For purposes of this motion to stay, CDK will reference legal deficiencies under Illinois law—the forum state—but they also fail under the laws of the states of plaintiffs' residence.

10

request to stay, the Court considers the fact that Defendant's arguments *may be* dispositive, rendering discovery unnecessary or at least narrowing its scope."). And while it is likely that CDK's motion to dismiss will dispose of the entire case, it is virtually certain that CDK's motion will streamline issues for discovery. *Rodriguez*, 2022 WL 704780, at \*1 (considering whether a stay will "simplify the issues in question and streamline the trial").

CDK respectfully submits that where its motion to dismiss will resolve the action in its entirety or at the very least clarify the scope of the claims and defenses at issue in this matter (and thereby simplify the issues for discovery and the burden on this Court), discovery should be stayed. *See id.* at \*2 (granting a motion to stay discovery pending resolution of the motion to dismiss because "[t]he ruling on any part of the motion to dismiss—some of which involve legal issues such as privity or a duty to disclose—has potential to dispose of certain claims brought by [the plaintiff], making discovery unnecessary, or, at least narrowing its scope").

### III. A Stay Will Reduce the Burden of Litigation.

"Given the burden, time, and expense often associated with responding to discovery in a putative class action, courts regularly stay discovery pending a ruling on a motion to dismiss." *Id*. at \*2; *see also Calderon*, 2022 WL 20742696, at \*1-2. As noted, plaintiffs seek to burden CDK with broad class-action discovery before the Court has an opportunity to determine whether plaintiffs have standing to sue on any valid claim. *See* ECF No. 54, at 4 (requesting discovery regarding "the allegations of Plaintiffs and the putative classes set forth in the Complaint and related to any defenses Defendant might raise"). Moreover, plaintiffs' proposed discovery plan appears to contemplate the completion of full-scale discovery by seven named plaintiffs from five different states on ten common law and statutory claims as well as the commencement of class certification briefing in less than nine months and potentially without a determination on the threshold issue of standing for certain plaintiffs and claims (an issue which will not even be fully

11

briefed until August). This prejudice is compounded by the fact that the five proposed class definitions are exceedingly broad, vague, and seldom limited by claim. ECF No. 53, at ¶¶ 268, 270-410.

This full-scale discovery would be far-reaching and costly: any discovery into "the allegations of Plaintiffs and the putative classes" imposes inquiries into CDK's network security, data systems, the manner and scope of the data breach, restoration process and timing, plaintiffs' vast individualized claims of injury and economic loss, and the size and scope of five classes. ECF No. 54, at 4. Courts regularly find that even limited discovery is overly burdensome at this early stage and is a factor weighing in favor of a stay pending a court's ruling on a motion to dismiss. *See Calderon*, 2022 WL 20742696, at *2 (staying discovery and finding "company-wide discovery," including manufacturing and testing records, and sales, revenue, and pricing information to be "unquestionably [] 'expensive and time-consuming'"); *Rodriguez*, 2022 WL 704780, at *2 (staying discovery because of plaintiff's "intention to seek discovery regarding 'the design, materials, and workmanship of the allegedly defective trunk lid wiring harness,'" "internal testing and validation procedures, consumer complaints, and warranty claims regarding the defect, and countermeasures and service programs undertaken by" the defendant in response to be "expensive and time-consuming"). Where, as here, the costs of such initial far-ranging discovery will fall largely on CDK, the claims and issues for discovery are likely to be narrowed, and no prejudice to plaintiffs is present, the Court should effectuate the speedy and inexpensive resolution of this matter by granting CDK's request to stay discovery pending a ruling on its motion to dismiss.

## CONCLUSION

For the foregoing reasons, CDK respectfully requests that the Court defer entering a discovery schedule until 30 days after the Court's ruling on CDK's motion to dismiss, or, in the

alternative, delay commencing discovery until 90 days after briefing on CDK's motion to dismiss is complete.

Dated: May 16, 2025

Respectfully submitted,

*/s/ Devin S. Anderson*
Devin S. Anderson (*admitted pro hac vice*)
Haley L. Darling (*admitted pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
Facsimile: (202) 389-5200
Email: devin.anderson@kirkland.com
Email: haley.darling@kirkland.com

Martin L. Roth, P.C.
IL Bar No. 6296464
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-7170
Facsimile: (312) 862-2200
Email: rothm@kirkland.com

*Counsel for Defendant CDK Global, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2025 a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OPPOSED MOTION TO STAY DISCOVERY** was electronically filed with the Court via the CM/ECF system which sent notification of such filing to all Counsel of Record.

Dated: May 16, 2025　　　　　　　　　　　*/s/ Devin S. Anderson*
　　　　　　　　　　　　　　　　　　　　　Devin S. Anderson