**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| *In re CDK Global Data Security Consumer Litigation* | Case No. 1:24-cv-05221<br><br>Hon. Jeffrey I. Cummings |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY**

## TABLE OF AUTHORITIES

**Cases**

*AOT Holding AG v. Archer Daniels Midland Co*., ........................................................ 4
    No. 19-2240, 2020 WL 1472266, (C.D. Ill. Jan. 22, 2020).

*Builders Ass'n of Greater Chi. v. City of Chi*.,
    170 F.R.D. 435 (N.D. Ill. 1996) ................................................................. 2

*Clapper v. Amnesty Int'l USA,*
    133 S.Ct. 1138  (2013) ........................................................................ 6,7

*Clinton v. Jones,*
    520 U.S. 681, 707–08 (1997)………………………………………………………4

*Cohn v. Taco Bell Corp*.,
    147 F.R.D. 154 (N.D. Ill. 1993) ................................................................ 2

*Coss v. Playtex Prods., LLC,*
    No. 08-C-50222, 2009 WL 1455358 (N.D. Ill. May 21, 2009) ............................ 5, 6

*In re Adobe Sys.,Inc. Privacy Litig.*,
    2014 WL 4379916 (N.D. Cal. Sept. 4, 2014). ....................................... 6, 7

*ITEX, Inc. v. Mount Vernon Mills, Inc.*,
    No. 08 CV 1224, 2010 WL 3655990, (N.D. Ill. Sept. 9, 2010)…………………………4

*New England Carpenters Health & Welfare Fund v. Abbott Labs*.,
    No. 12-cv-1662, 2013 WL 690613 (N.D. Ill. Feb. 20, 2013) ............................ 1, 3, 4, 5, 9, 10

*Niederhoffer Intermarket Fund, L.P. v. Chi. Mercantile Exchange*,
    No. 99-cv-3223, 1999 WL 731773 (N.D. Ill. Aug. 31, 1999)................................... 2

*Red Barn Motors, Inc. v. Cox Enters.*,
    No. 1:14-cv-01589-TWP-DKL, 2016 WL 1731328  (S.D. Ind. May 2, 2016)…………..……..3

*Remijas v. Neiman Marcus Group, LLC*,
    No. 14-3122 (7th Cir. 2015)................................................................. 6, 8

*Sadler v. Retail Properties*,
    2013 WL 12333447, at *1 (N.D. Ill. Sept. 27, 2013)................................... 2

*Schaap v. Executive Indus. Inc*.,
    130 F.R.D. 384 (N.D. Ill. 1990). ......................................................... 10

*SK Hand Tool Corp. v. Dresser Indus.*,
852 F.2d 936 (7th Cir. 1988) ............................................................................... 1

*Syngenta Seeds, Inc. v. BTA Branded, Inc.*,
No. 05-cv-6673, 2007 WL 3256848 (N.D. Ill. Nov. 1, 2007) .................................. 2

*Tamburo v. Dworkin*,
No. 04-C-3317, WL 4867346 (N.D. Ill. Nov. 17, 2010). ........................................ 5

*U.S. ex rel. Robinson v. Indiana University Health, Inc.*,
No. 1:13-cv-02009, 2015 WL 3961221 (S.D. Ind. June 30, 2015) ....................... 3, 9

*United States v. Board of Educ.*,
636 F. Supp. 1046 (N.D. Ill. 1986) ....................................................................... 2

*Witz v. Great Lakes Educ. Loan Servs., Inc.*,
No. 19-CV-06715, 2020, WL 8254382 (N.D. Ill. July 30, 2020) .......................... 10

**Rules**

Fed. R. Civ. P. 1 ................................................................................................. 4

**Other Authorities**

8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure §
2035, at 157-58 (3d ed. 2010)) ....................................................................... 5, 12

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

I.     Legal Standard ..............................................................................................1

II.    Defendant Failed to Establish Good Cause for a Stay ...................................3

III.   Staying Discovery Will Unduly Prejudice Plaintiffs .....................................4

IV.   The Entry of A Stay Is Generally Disfavored ...............................................4

V.    Staying Discovery Will Not Eliminate or Narrow the Claims and Defenses for Discovery Because Defendant's Motion to Dismiss is Not Likely to Prevail ..............6

VI.   Defendant's "Burden" to Participate in Discovery Will Not Be Reduced by the Stay ..8

       i.    *Plaintiff's Requests are Not Overbroad and Are Proportional to the Needs of the Case.*..................................................................................................8

       ii.   *The Stay Will Not Reduce the Burden.* ............................................9

CONCLUSION...........................................................................................................11

**INTRODUCTION**

Defendant CDK Global, LLC ("CDK") experienced a ransomware attack in June 2024 that disclosed the personally identifiable information ("PII") of Plaintiffs and Class Members. Following Defendant's confirmation of the ransomware attack ("Data Breach"), multiple putative class actions were filed against Defendant. On October 25, 2024, this Court consolidated ten cases pending in the Northern District of Illinois against CDK on behalf of employees and consumers stemming from the Data Breach and directed plaintiffs to "file a consolidated complaint within 45 days of an order appointing interim class counsel." (ECF No. 30.)

On April 18, 2025, Plaintiffs filed a Consolidated Class Action Complaint. (ECF No. 53.) CDK intends to file a motion to dismiss challenging Plaintiffs' Article III standing and filed a Motion to Stay Discovery pending the Court's ruling on its Motion to Dismiss. Plaintiffs oppose CDK's Motion to Stay because (1) a stay will unduly prejudice Plaintiffs; (2) stays are disfavored in this District; (3) Plaintiffs sufficiently alleged Article III standing in their Consolidated Class Action Complaint; and (4) a stay will not reduce the burden and costs on the parties or the Court.

**I.      Legal Standard**

Pursuant to Federal Rule of Civil Procedure 26(c) and (d), the Court has broad discretion to limit the scope and sequence of discovery. Pursuant to Rule 26(c)(1), the Court may limit discovery "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense[.]" The grounds for limiting the scope of discovery are listed in Rule 26(b)(1), and the pendency of a motion to dismiss the complaint, which is the primary basis of CDK's motion to stay, is not one of them. Indeed, in this District, "[t]he mere filing of a motion to dismiss does not automatically stay discovery." *New England Carpenters Health & Welfare Fund v. Abbott Labs*., No. 12-cv-1662, 2013 WL 690613, at *1 (N.D. Ill. Feb. 20, 2013) (citing *SK Hand Tool*

*Corp. v. Dresser Indus.*, 852 F.2d 936, 945 (7th Cir. 1988)) ("Discovery need not cease during the pendency of a motion to dismiss."); *Syngenta Seeds, Inc. v. BTA Branded, Inc.*, 05-cv-6673, 2007 WL 3256848 at *2 (N.D. Ill. Nov. 1, 2007) ("[D]efendants must assert something more than the mere existence of a motion to dismiss to support a claim of good cause to request a complete stay of discovery."). "Nor does filing a motion to stay mean that a court will automatically grant it." *Abbott Labs.*, 2013 WL 690613, at *1-2; *see also Builders Ass'n of Greater Chi. v. City of Chi.*, 170 F.R.D. 435, 437 (N.D. Ill. 1996) (same).

While Rule 26 gives the court authority to stay discovery, this authority must be exercised so as to "secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1. In determining whether to grant a stay, "the court may consider the following factors: (1) 'whether a stay will unduly prejudice or tactically disadvantage the non-moving party,' (2) 'whether a stay will simplify the issues in question and streamline the trial,' and (3) 'whether a stay will reduce the burden of litigation on the parties and on the court." *Sadler v. Retail Properties*, 2013 WL 12333447, at *1 (N.D. Ill. Sept. 27, 2013). Where the court finds that its interference in the discovery process is unlikely to significantly expedite the litigation, and may actually slow it down, it should decline to interfere. *See Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 161-62 (N.D. Ill. 1993) (denying motion to stay discovery where the stay would prolong discovery and the success of the motion to dismiss was speculative). Accordingly, "this [c]ourt rarely suspends discovery pending a 'motion to dismiss.' And such motions are eventually denied." *United States v. Board of Educ.*, 636 F. Supp. 1046, 1047 (N.D. Ill. 1986); *see also*, e.g., *Niederhoffer Intermarket Fund, L.P. v. Chi. Mercantile Exchange*, 99-cv-3223, 1999 WL 731773 (N.D. Ill. Aug. 31, 1999) (denying stay of discovery pending ruling on motion to dismiss).

## II.    Defendant Failed to Establish Good Cause for a Stay

Defendant is required to demonstrate, with affidavits or other evidence, that there is good cause for a stay. Defendant entirely fails to meet that burden and instead argues that a stay is appropriate because Plaintiffs have not specifically articulated an urgent need for discovery. *See* Memorandum ("Memo") at 6. However, it is Defendant's burden to show good cause for a stay of discovery. *New England Carpenters Health & Welfare Fund v. Abbott Labs*, No. 12 C 1662, 2013 WL 690613, at *1, 3 (N.D. Ill. Feb. 20, 2013). "In order to establish good cause, 'courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Id*. at *4 (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2035, at 157-58 (3d ed. 2010)). The requisite showing "typically requires affidavits or other evidence supporting a party's assertions of burden." *U.S. ex rel. Robinson v. Indiana University Health, Inc.*, No. 1:13-cv-02009, 2015 WL 3961221, at *5 (S.D. Ind. June 30, 2015).

Courts in the Seventh Circuit often cite to *Red Barn* during discussions of a movant's burden to show good cause when moving for a stay of discovery. *Red Barn Motors, Inc. v. Cox Enters.*, No. 1:14-cv-01589-TWP-DKL, 2016 WL 1731328 (S.D. Ind. May 2, 2016). In *Red Barn*, defendants moved for a stay of discovery on the basis of their pending dispositive motion for dismissal. The court denied the motion and concluded the following:

> Defendants have failed to make a showing, with affidavits or other supporting evidence, that the discovery requests would impose a substantial burden . . ., requiring it to expend "dozens and dozens of hours searching for responsive information and documentation while incurring tens of thousands of dollars in legal costs." [Defs.' Mot. Stay Discovery, doc. 119 at 7.] All that Defendants have offered to support their motion are the unsupported statements of counsel in briefs. This is insufficient.

*Id.* at *7. Similar to the Defendants in *Red Barn,* CDK makes no effort to establish good cause, as it attached no affidavits, exhibits, or other comparable documents to its Motion to Stay or

3

accompanying Memorandum. In fact, CDK never once mentions "good cause" in its Memorandum. Instead CDK speaks only in "conclusory" terms that "there is no urgent need" or "emergency"; and that Plaintiffs "seek no immediate relief." Memo at 6, 7. As stated above, such unsupported assertions fail to establish good cause, and do not entitle CDK to a stay of discovery. See *New Eng. Carpenters Health*, 2013 WL 690613.

### III. Staying Discovery Will Unduly Prejudice Plaintiffs

Contrary to Defendant's claim, staying discovery will unduly prejudice Plaintiffs and Class Members. Plaintiffs bring this case as a putative class action not only to vindicate their own rights, but also the rights of similarly aggrieved CDK consumers and employees. Delaying discovery and effectively putting the case on hold pending a ruling on the motion to dismiss, will delay Plaintiffs and the putative Class the relief they seek. Additionally, staying discovery "increase[s] the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts." *Clinton v. Jones,* 520 U.S. 681, 707–08 (1997). *See also AOT Holding AG v. Archer Daniels Midland Co*., No. 19-2240, 2020 WL 1472266, at *1 (C.D. Ill. Jan. 22, 2020). ("A stay of discovery could cause evidence to be lost at the expense of [plaintiff]. Specifically, the memories of witnesses might fade before they are deposed, and electronic evidence may be inadvertently destroyed*.")*; *ITEX, Inc. v. Mount Vernon Mills, Inc.*, No. 08 CV 1224, 2010 WL 3655990, at *2 (N.D. Ill. Sept. 9, 2010) ("granting the stay in this case . . . would only put off the requisite fact-finding until a time when memories are less clear and evidence less fresh"). Plaintiffs are intent on pursuing the just, speedy and efficient adjudication of this dispute, and as such, believe CDK's requested stay should not be granted.

### IV. The Entry of A Stay Is Generally Disfavored

Despite CDK's argument to the contrary, the Northern District of Illinois has made it clear that it disfavors discovery stays. This District disfavors stays "because they bring resolution of the

dispute to a standstill." *New England Carpenters Health and Welfare Fund v. Abbott Labs*., No. 12-C-1662, 2013 WL 690613, at *2 (N.D. Ill. Feb. 20, 2013) (quoting *Coss v. Playtex Prods., LLC*, No. 08-C-50222, 2009 WL 1455358, at *1 (N.D. Ill. May 21, 2009) (denying motion to stay discovery pending resolution of motion to dismiss). Indeed, "[w]here the Court finds that a stay of discovery is unlikely to significantly expedite the litigation, and may actually slow it down, it will decline to interfere." *Tamburo v. Dworkin*, No. 04-C-3317, WL 4867346, at *2 (N.D. Ill. Nov. 17, 2010). CDK points to *Rodriguez* and *Calderon* as examples of other class actions in this District where Courts granted stay requests. *Rodriguez v. Ford Motor Co.*, 2022 WL 704780 at 3 (N.D. Ill. Mar. 9, 2022); *Calderon v. Procter & Gamble Co*., 2022 WL 20742696 (N.D. Ill. Oct. 6, 2022). However, neither of these cases have enough similarities to the case here. First, in *Rodriguez*, the Court granted movant's motion to stay because of pleading defects in each of Plaintiff's claims. *Rodriguez*, 2022 WL 704780, at 3. When weighing the other factors, the Court concluded that the likelihood that the entire case would be disposed following Defendant's motion to dismiss, in light of the pleading defects, warranted a stay of discovery, since class actions require much more time, burden, and expense. Similarly, in *Calderon*, the motion to stay was granted because there was evidence that the motion to dismiss could dispose of the entire case after resolving issues like standing and jurisdiction. *Calderon*, 2022 WL 20742696. Both of these cases are inapposite because, as discussed below, there are no pleading defects in Plaintiffs' complaint, and Plaintiffs adequately allege Article III standing and jurisdiction.

The stay requested by Defendant would not promote judicial economy and would significantly prejudice Plaintiffs by bringing their lawsuit to a standstill. As previously mentioned, the onus of showing good cause is on the party moving for the Stay, and here, CDK has not demonstrated good cause to do so. In sum, "[a]lthough stays of discovery are sometimes

appropriate, this court disfavors them because they bring resolution of the dispute to a standstill." *Coss v. Playtex Prods*., LLC, No. 08 C 50222, 2009 WL 1455358, at *1 (N.D. Ill. May 21, 2009).

### V. Staying Discovery Will Not Eliminate or Narrow the Claims and Defenses for Discovery Because Defendant's Motion to Dismiss is Not Likely to Prevail

CDK believes its motion to dismiss will eliminate or reduce the need for discovery, arguing that Plaintiffs' claims supposedly fail as a matter of law and Plaintiffs lack Article III standing. However, this belief is unfounded, speculative, and premature.

First, CDK's claims that the uniqueness of this data breach incident warrants a stay because Plaintiffs lack Article III standing is not well taken. In *Remijas v. Neiman Marcus*, defendant suffered a data breach that exposed the PII of thousands of its customers. *Remijas v. Neiman Marcus Group, LLC*, No. 14-3122 (7th Cir. 2015).Thousands of customers experienced fraud, and even those who did not, feared for the misuse of their PII, leading to the filing of the complaint against Neiman Marcus. Neiman Marcus filed a motion to dismiss plaintiff's complaint claimed that it lacked Article III standing since all customers who experienced fraud were reimbursed for unauthorized charges. The district court agreed with Defendant and ruled in its favor, dismissing plaintiff's claims without prejudice. On appeal, the Seventh Circuit reversed and concluded that the plaintiffs satisfied Article III's requirements, despite being reimbursed for any unauthorized charges. Ultimately, the Court held that allegations of future harm establish Article III standing if the harm is "certainly impending." *Id.* at 8 (citing *Clapper v. Amnesty Int'l USA*,133 S.Ct.1138, 1147(2013)(citation omitted)).

Similarly, *In re Adobe Sys., Inc. Privacy Litig.,* plaintiffs alleged that their injury was having their personal data stolen, and that the use of the stolen information was not just possible, but was certainly impending. Although only some of the customers experienced actual fraud using their financial information, all of the customers alleged lost time and money spent as a result of

the exposure of their personal information. Accordingly, the Court held that plaintiffs' successfully argued standing even if they had not already experienced fraud or misuse of their PII. *In re Adobe Sys., Inc. Privacy Litig.*, 2014 WL 4379916 (N.D. Cal. Sept. 4, 2014). This is because the risk that Plaintiffs' personal data will be misused by the hackers who breached a company's network is very immediate, real, and certainly impending. As such, "[R]equiring Plaintiffs to wait for the threatened harm to materialize in order to sue" provides a defendant with more leeway to argue that the misuse of the information is not traceable to the breach. *In re Adobe Sys.*, 2014 WL 4379916, at *8 n.5.

Here, like in *Adobe* and *Clapper*, CDK claims that Plaintiffs lack Article III standing because they cannot assert an injury-in-fact traceable to CDK. *See* Memo, at 8. CDK states that this is not a typical data breach case because following its investigation, CDK did not discover any PII that would trigger notification obligations. *Id.* Additionally, CDK states that the only PII exposed from CDK's systems were related to 36 current and former vendors, none of which are any of the named Plaintiffs in the lawsuit. CDK completely disregards the fact that it previously confirmed that unauthorized individuals gained access to CDK's systems on June 19 and June 20, 2024.[1] Furthermore, CDK fails to even address that a cybercriminal team by the name of BlackSuit took credit for the data breach, and demanded a $25 million ransom payment to end the cyberattack. Multiple news outlets reported that CDK ultimately paid the demanded ransom, which CDK conveniently omits from its Motion to Stay or Memorandum in Support. *See* ECF No. 54 at ¶ 27. Upon information and belief, the PII held by CDK at the time of the breach is included but not limited to name, addresses, Social Security numbers, driver's licenses, and financial details

---

[1] Notice Letter, OFFICE OF THE MASSACHUSETTS ATTORNEY GENERAL, https://www.mass.gov/doc/2024-1703-cdk-global-llc/download

like credit card numbers and bank account information. *See* ECF No. 53 at ¶ 6. As such, CDK cannot in good faith claim that Plaintiffs and other Class Members' PII was not also exposed because it was held on the same network and systems that the unauthorized actors accessed.

As previously stated in Plaintiff's Consolidated Amended Complaint (ECF No. 53) cybercriminals have no incentive to destroy such valuable information that they have already accessed and encrypted from companies' IT systems, and it is extremely likely that these criminals have already sold or will soon sell the PII stolen from CDK's systems. It is irrelevant that CDK is reported to have paid the ransom to BlackSuit, because the PII was already exposed. As the Court in *Remijas* stated in its order, "[w]hy else would hackers break into a store's database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities." *Remijas*, No. 14-3122 at 9 (7th Cir. 2015).

At this stage, Plaintiffs have sufficiently pled Article III standing, and as such, CDK's assertion that its 12(b) motion will be dispositive of the case is inaccurate. Accordingly, CDK should not succeed in its Motion.

### VI. Defendant's "Burden" to Participate in Discovery Will Not Be Reduced by the Stay

#### i. *Plaintiffs' Requests are Not Overbroad and Are Proportional to the Needs of the Case.*

Defendant's Memorandum makes it seem as though Plaintiffs' discovery requests stated in the joint status report are outrageously broad and unduly burdensome. That is simply not true. Plaintiffs requested "discovery related to the allegations of Plaintiffs and the putative classes set forth in the Complaint and related to any defenses Defendant might raise." ECF No. 54 at 4. Plaintiffs respectfully maintain that the requested discovery category is garden-variety and highly

typical. Indeed, information directly related to Plaintiffs' claims is called for in every case, so Defendant has not met their burden of showing discovery is especially burdensome here. Further, Defendant claims that Plaintiffs' five proposed class definitions are exceedingly broad, vague, and seldom limited by claim. *See* Memo at 12. This claim is very easily refuted. Plaintiffs' class and subclass definitions are both clear and specific. Defendant's assertion that the classes are not limited by claim is irrelevant, as the Federal Rules do not require classes to be limited by claim.

### ii. *The Stay Will Not Reduce the Burden.*

Likewise, the proposed stay will not materially reduce the burden on the parties or the Court. CDK argues Plaintiffs' attempt to collect class-wide discovery would unfairly burden CDK because the discovery would be "far-reaching and costly". *See* Memo at 12. CDK supports this argument by stating that CDK would have to inquire into their network security and data systems, details related to the data breach, including the scope and the timing of the restoration process, the injuries suffered by the affected individuals, and the size of the class. *Id.* However, all of these claims are rather generalized and conclusory statements. "In order to establish good cause, 'courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *New Eng. Carpenters Health & Welfare Fund v. Abbott Labs*., No. 12 C 1662, 2013 WL 690613, at *4 (N.D. Ill. Feb. 20, 2013) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2035, at 157-58 (3d ed. 2010)). The requisite showing "typically requires affidavits or other evidence supporting a party's assertions of burden." *U.S. ex rel. Robinson v. Indiana University Health, Inc.*, No. 1:13-cv-02009, 2015 WL 3961221, at *5 (S.D. Ind. June 30, 2015). Further, where, as here, the moving parties raise supposed burdens of engaging in discovery as a basis for a stay, they must "specify the nature of the burden and provide specific explanations as to why" the discovery cannot be, or should not

have to be, answered. *Schaap v. Executive Indus. Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990). The mere fact that a moving party "will be required to expend a considerable amount of time, effort, or expense" in answering the discovery is not a sufficient basis upon which to preclude it. *Id*.

CDK makes no such effort to provide evidence supporting its assertion of burden. Instead CDK speaks only in "conclusory" terms that that "there is no urgent need"; that discovery would be "far reaching and costly" and that Plaintiffs "seek no immediate relief." Memo at 6, 11. Such unsupported assertions do not entitle CDK to a stay of discovery. *See New Eng. Carpenters Health*, 2013 WL 690613. According to CDK, this request to meaningfully engage in discovery (a responsibility inherent to litigation) is simply too much of a burden to bear. Even if routine discovery, which is part and parcel of litigation, were grounds for a stay, a blanket stay of discovery is not an appropriate way to address concerns related to the time and expense of discovery – even in a nationwide class action, as Judge Kness held in denying the stay sought in *Witz*. *Witz v. Great Lakes Educ. Loan Servs., Inc.*, No. 19-CV-06715, 2020 WL 8254382, *2 (N.D. Ill. July 30, 2020). "This is especially true where, as here, no discovery requests have apparently yet been propounded." *Id*. If CDK later believes, after receiving discovery requests, that a particular request is overly burdensome, harassing, or disproportionate to the needs of the case, it can resolve those concerns through motion practice addressed to the discovery requests at issue. Plaintiffs have no intention to serve needlessly burdensome discovery on CDK, and Plaintiffs recognize that receiving full responses will be a process that takes time. Nevertheless, the interests of moving the case forward are best served by permitting discovery to be served without delay, and for responses to be prepared concurrently with the Court's review of and resolution of the pending Rule 12 motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny CDK's Motion and enter an order allowing discovery to proceed.

Dated: June 6, 2025

Respectfully submitted,

*/s/Andrew Shamis*
Andrew J. Shamis
(IL Bar No. 6337427)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: 305-479-2299
ashamis@shamisgentile.com

Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

*Interim Co-Lead Counsel for the Putative Class*

Gary M. Klinger
(IL Bar No. 6303726)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606 866.252.0878
gklinger@milberg.com

*Interim Liaison Counsel for the Putative Class*

Patrick D. Donathen
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor

Pittsburgh, PA 15222
(412) 322-9243
patrick@lcllp.com


Maureen Kane Berg
(IL Bar No. 6200319)
**Lockridge Grindal Nauen PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
612.339.6900
mkberg@locklaw.com

Jeffrey S. Goldenberg
(IL Bar No. 0063771)
**GOLDENBERG SCHNEIDER, L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
T: (513) 345-8297
jgoldenberg@gs-legal.com
*Interim Co-Lead Counsel for the Putative Employee/Consumer Subclass*

12

**CERTIFICATE OF SERVICE**

I, Andrew Shamis, hereby certify that on June 6, 2025, a copy of Plaintiffs' Opposition to Defendant's Motion to Stay Discovery was served on all counsel of record via the Court's CM/ECF system which sent notification of such filing to all Counsel of Record.

Dated: June 6, 2025

*/s/Andrew Shamis*
Andrew Shamis